# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-3111

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES D. GILBERT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 04 CR 203—**Larry J. McKinney**, *Chief Judge.*

ARGUED JUNE 2, 2006—DECIDED SEPTEMBER 19, 2006

Before POSNER, EASTERBROOK, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* A jury convicted James D. Gilbert of possessing a firearm in interstate commerce after previously having been convicted of a felony offense. *See* 18 U.S.C. § 922(g)(1). At sentencing, the district court determined that three of Gilbert's prior convictions constituted violent felonies under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), and that determination triggered a mandatory minimum prison term of fifteen years, § 924(e)(1). The court sentenced him to a term of just under twenty years. Gilbert appeals his sentence, contending that the district court erred in treating his prior conviction in Indiana for criminal confinement as a violent

felony conviction. Consistent with our holding in *United States v. Hagenow*, 423 F.3d 638, 644 (7th Cir. 2005), we agree. We therefore vacate Gilbert's sentence and remand for resentencing.

**I.**

On August 16, 2004, two Indianapolis police officers on patrol began to follow a gold Chevrolet Cavalier when the vehicle nearly ran through a stop sign. After a quick computer check revealed that the plates on the Cavalier were registered to a different vehicle, the officers stopped the car. Gilbert was a passenger in the Cavalier.

Once the officers determined that the driver, Jarvis Johnson, lacked proper proof of registration, they decided to impound the car and asked Johnson to step out of the vehicle. Officer Steven Walters sought and received Johnson's consent to a search of his outer clothing for safety purposes. When Walters patted down the back pockets of Johnson's pants, he detected what felt like a small baggie containing a substance of some sort. Walters solicited Johnson's consent to remove the object from his pocket, and Johnson agreed. But before Walters could put his hand on the item, Johnson grabbed and swallowed it. Walters immediately put Johnson on the ground and placed him under arrest.

At that point, officer Brian Morris asked Gilbert to step out of the car. Morris obtained Gilbert's consent to a limited search of his person. But as Morris began to pat down Gilbert, Gilbert shoved the officer away and fled. Walters noticed that Gilbert's right hand was clutched around the front of his waistband as he ran. Walters ordered Gilbert to stop and, when Gilbert did not heed the command, shot him with a Taser stun gun. The electrical discharge caused Gilbert's right hand to drop away from his waistband, and a gun fell out of that hand. Gilbert managed to keep

running, however. Another officer on the scene shot him a second time with a stun gun and that brought the chase to an end. The gun Gilbert had dropped—a loaded .38-caliber pistol—was recovered and a small quantity of cocaine in rock form was found in Gilbert's shoe. A latent print on the gun matched one of Gilbert's fingerprints. Gilbert was charged with being a felon in possession of a firearm, and at the conclusion of a one-day trial, a jury convicted him of that charge.

Gilbert's rather substantial criminal history includes an Indiana state court conviction for criminal confinement, and a key issue at sentencing was whether that offense should be categorized as a violent felony. Although the default maximum prison term for a felon in possession of a firearm is ten years, *see* 18 U.S.C. § 924(a)(2), the Armed Career Criminal Act raises the maximum to life and commands a minimum prison term of fifteen years for persons who have three previous convictions for a violent felony or a serious drug offense, *id.* § 924(e)(1). It was undisputed that two of Gilbert's prior convictions were for offenses (robbery and sexual battery) that qualify as violent felonies under this statute, but Gilbert argued that his conviction for criminal confinement did not so qualify. As Indiana defines criminal confinement, the offense can be committed by removing a person from one place to another through fraud or enticement, without the threatened or actual use of force. *See* Ind. Code § 35-42-3-3(a). The charging document underlying Gilbert's conviction did not disclose by which of the specified means Gilbert had accomplished the removal of his victim. Nonetheless, the district court, relying on our opinion in *United States v. Wallace*, 326 F.3d 881 (7th Cir. 2003), reasoned that criminal confinement constitutes a violent felony because the offense by its nature necessarily presents a risk that someone will be physically injured whether or not force is involved. R. 52 at 19. With three of his prior

convictions thus being treated as violent felonies, Gilbert faced a minimum prison term of fifteen years.

The characterization of Gilbert's prior convictions also had a parallel and pronounced effect on his sentencing range under the United States Sentencing Guidelines. The armed career criminal provision of the Guidelines specified an offense level of 33 for Gilbert. United States Sentencing Commission, *Guidelines Manual*, § 4B1.4(b) (3)(B) (Nov. 2004).[1] Coupled with a criminal history category of VI, that offense level called for a sentence in the range of 235 to 293 months. Without the increase mandated by this provision of the Guidelines (and the increased statutory minimum term), Gilbert's offense level would have been 28 and his sentencing range would have been much lower: 140 to 175 months.

At sentencing, Gilbert's counsel, invoking the court's discretion to impose a sentence outside of the Guidelines range, *see United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), recommended the statutorily mandated minimum sentence of fifteen years (or 180 months) in view of Gilbert's relative youth (he was 27 at the time of the offense) and the abuse he had suffered as a child, among other factors. But the district court, having in mind the extent and gravity of Gilbert's criminal record and the sentencing factors identified in 18 U.S.C. § 3553(a), reasoned that a sentence within the Guidelines range was appropriate. R. 52 at 30-31. The court concluded ultimately that a prison term at the bottom of the range was sufficient to achieve the statutory sentencing goals identified in section 3553(a)(2). *Id.* Gilbert was thus ordered to serve a prison term of 235 months.

---

[1] The district court used the November 2004 version of the Guidelines—the version which was in effect at the time of Gilbert's sentencing in July 2005—to calculate Gilbert's advisory Guidelines sentencing range.

**II.**

Gilbert appeals the district court's determination that his conviction for criminal confinement was a conviction for a violent felony as that term is defined in the Armed Career Criminal Act. If that categorization was erroneous, then the fifteen-year minimum specified by the Act, along with the corresponding provision of the Guidelines, did not apply. Whether a prior offense constitutes a violent felony for this purpose is a question of law that we review de novo. *E.g.*, *Wallace*, 326 F.3d at 886.

Our review begins with the language of the Armed Career Criminal Act. The Act defines "violent felony" as follows:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; . . . .

18 U.S.C. § 924(e)(2)(B). Needless to say, criminal confinement is not burglary, arson, or extortion, nor does it involve the use of explosives. So criminal confinement might qualify as a violent felony only if the actual, attempted or threatened use of force against the person of another is an element of the offense or if the offense involves conduct that presents a serious potential risk of physical injury to someone other than the perpetrator.

The manner in which Indiana has defined the offense does not invariably require proof that force was used, attempted, or threatened. The Indiana Code defines the felony offense of criminal confinement as follows:

A person who knowingly or intentionally:

> (1) confines another person without the other person's consent; or
>
> (2) removes another person, by fraud, enticement, force, or threat of force, from one (1) place to another;

commits criminal confinement . . . a Class D felony.

Ind. Code § 35-42-3-3(a). As the statutory language reveals, there are multiple variants of criminal confinement, not all of which involve force. One can commit the crime by confining someone without her consent (section 1 of the statute), or one can remove the victim from one place to another (section 2). *See Kelly v. State*, 535 N.E.2d 140, 140 (Ind. 1989) (describing these two primary variants of the offense as "confinement by non-consensual restraint in place and confinement by removal"). The first form of criminal confinement entails the restriction of the victim's freedom or movement against his will, *see* § 35-42-3-1 (defining the term "confine"); *Pyle v. State*, 476 N.E.2d 124, 127 (Ind. 1985); and although physical force or the threat of force likely is used to effectuate the restraint in most instances, it is not an essential element of the crime. *See Kelly*, 535 N.E.2d at 141 (identifying the elements of confinement by restraint as (1) the knowing or intentional (2) confinement of another person (3) without his consent) (quoting *Addis v. State*, 404 N.E.2d 59, 61 (Ind. App. Ct. 1980)); *but see also Dubinion v. State*, 493 N.E.2d 1245, 1246 (Ind. 1986) (assuming, as defendant argued, that force is an element of the offense). The second form of criminal confinement involves the removal of the victim from one place to another. Although force and the threat of force are two of the ways in which the removal can be accomplished, they are not the exclusive means. As the statutory language makes clear, the removal can also be accomplished through fraud or enticement. *See, e.g.*, *Harbison v. State*, 452 N.E.2d

943 (Ind. 1983) (victim of sexual assault was lured to remote location by his assailants, who led him to believe he was simply on a "joyride" with them); *Wise v. State*, 635 N.E.2d 221 (Ind. App Ct. 1994) (child who was sexually assaulted by her stepfather was lured to motel room based on expectation that they would wrap Christmas gifts for her mother there, as they had done in the past); *Williams v. State*, 634 N.E.2d 849 (Ind. App. Ct. 1994) (mother persuaded individual charged with monitoring visits with her children to allow her to drive them all to another town, falsely representing that they were to visit a relative; on arrival in that town, mother ordered monitor out of car and fled with her children).[2]

Because there is more than one way of committing criminal confinement in Indiana, and not all variants require proof of force, the mere fact of Gilbert's conviction does not tell us whether he committed a crime that necessarily involved force. We must look beyond the face of his conviction to see if we can ascertain the particular variant of criminal confinement of which Gilbert was convicted. *See Taylor v. United States*, 495 U.S. 575, 602, 110 S. Ct. 2143, 2160 (1990); *United States v. Mathews*, 453 F.3d 830, 833-34 (7th Cir. 2006); *United States v. Sperberg*, 432 F.3d

---

[2] The Indiana statute does not define the terms "fraud" or "enticement." BLACK'S defines "enticement" as "[t]he act or an instance of wrongfully soliciting or luring a person to do something," and "fraud" as (among other things) "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." BLACK'S LAW DICTIONARY, 553, 670 (7th ed. 1999). The Indiana Appellate Court concluded recently that these terms provide so little notice of what conduct is prohibited as to render the statute unconstitutionally vague as applied to a man who concocted a story regarding a radio giveaway contest in order to induce his victims to leave their workplaces, come to his home, and strip naked in front of him. *Brown v. State*, 848 N.E.2d 699, 711-13 (Ind. App. Ct. 2006).

706, 708 (7th Cir. 2005); *see also*, *e.g.*, *Hagenow*, 423 F.3d at 644 (because force not a prerequisite for all forms of criminal confinement, court must look beyond fact of conviction to determine whether force was an element of the particular variant of which defendant was convicted).

The scope of our inquiry, however, is limited. Our purpose is to determine what form of the offense Gilbert committed, not how he happened to commit the crime. *Sperberg*, 432 F.3d at 708 ("recidivist enhancements depend on what the person stands convicted of and not what he did in fact"); *United States v. Lewis*, 405 F.3d 511, 515 (7th Cir. 2005). That is, we want to know whether Gilbert's conviction necessarily reflects a finding that force (actual, threatened, or attempted) was used in the commission of the offense. At the same time, the list of materials that we may properly consider in answering this question is short. *See Shepard v. United States*, 544 U.S. 13, 26, 125 S. Ct. 1254, 1263 (2005). As relevant here, those materials include the charging document pursuant to which Gilbert was convicted. *Ibid.*

The charging information filed in Indiana court alleged that Gilbert committed criminal confinement as follows:

> On or about August 8, 2001, in Marion County, State of Indiana, at 5400 Charleston Street . . ., the following named defendant, James Gilbert, did knowingly remove Nicole Davis, another person, by fraud, enticement, force or threat of force from the front of 5400 Charleston, to the back of the building.

Gilbert Separate App. 47. This language tells that Gilbert was charged and convicted under the second section of the statute rather than the first. We know, consequently, that neither physical restraint of the victim nor her lack of consent were prerequisites to Gilbert's conviction. *See Pyle*, 476 N.E.2d at 127 (essence of crime defined in first section of criminal confinement statute is restriction of person's freedom of movement against his will); *Addis*, 404 N.E.2d

at 61 (lack of consent is an element of crime defined in first but not second section of the statute). This will prove relevant to our discussion of *Wallace* below. But beyond knowing that Gilbert was convicted of removing his victim from one place to another rather than physically confining her, we do not know whether he accomplished the removal by force or the threat of force or rather through nonviolent means, for the language of the information encompasses all four of the sub-variants. In short, the charge does not tell us whether some type of force— actual, attempted, or threatened—was a prerequisite to Gilbert's conviction. *See* 18 U.S.C. § 924(e)(2)(B)(i).[3]

Because we cannot say that force was an element of the crime of which Gilbert was convicted, his conviction for criminal confinement can be considered a violent felony conviction only if we may categorically say that removing a person from one place to another, whether accomplished through fraud, enticement, force or threat of force, always presents a serious potential risk of injury to another.

---

[3] Below, the government urged the district court to look at a companion charge set forth in the same information (and on which Gilbert was also convicted) for additional detail as to Gilbert's conduct. Gilbert was charged with domestic battery (a misdemeanor) in addition to criminal confinement, and the domestic battery charge alleged that Gilbert had struck the victim on her face with his closed fist, causing her to suffer visible injury and pain. Gilbert Separate App. 48. The government viewed that second charge as sufficient proof that the conduct underlying Gilbert's conviction for criminal confinement was violent and necessarily posed a risk of injury to the victim. R. 52 at 10-12. However, the district court did not rely on the companion charge in concluding that Gilbert had been convicted of a violent felony, and the government has not pursued this argument on appeal. Consequently, we express no opinion as to whether a court may look to a companion charge in assessing the nature of a prior conviction.

§ 924(e)(2)(B)(ii). As we have emphasized in prior cases, it is the potential for an injury to occur that matters for purposes of the violent felony enhancement; neither our ability to imagine a nonviolent scenario, *see Wallace*, 326 F.3d at 887, nor the fact that an injury did not actually occur, *see United States v. Howze*, 343 F.3d 919, 922 (7th Cir. 2003), precludes a determination that the offense is violent, so long as the offense by its nature presents a real risk of injury.

In *Wallace*, we considered whether the Illinois offense of unlawful restraint amounts to a crime of violence for purposes of section 924(e)(2)(B). Illinois defines that offense as the knowing detention of another person without legal authority; no particular means of committing the detention—violent or otherwise—are specified. *See id.* at 886, quoting 720 Ill. Comp. Stat. § 5/10-3 (2003). The defendant argued that because the offense could be committed without force, it did not qualify as a violent felony. We disagreed. Although we accepted his contention that an unlawful restraint could be accomplished through fraud, trickery, or deceit, we nonetheless thought that the offense presented a real risk that an injury might occur. "[E]ven in cases where the assailant attempts to restrain the victim without the use or threat of force, the potential exists that the victim may resist the assailant's efforts and try to escape. The assailant then may resort to force in an effort to prevent the victim from leaving." *Id.* at 887.

The district court followed *Wallace*'s reasoning and concluded that the same potential for resistance is present when an individual is criminally confined, even if the confinement is accomplished by removing the victim from place to place by fraud or enticement rather than by force or threat of force.

> So . . . the focus here is not on the facts. The focus here is on the "otherwise involves conduct that presents a

serious potential risk of physical injury to another." And in looking at that, the issue is whether this charge has within it a potential for physical injury, not whether physical injury actually or necessarily resulted. [Nor does it matter] whether the physical injury was clearly charged or charged with a group of other possibilities, as in the Indiana code. The broad language that covers the Illinois code I think covers the Indiana code also.

So the argument that the use or the threat of physical force is not an element of the offense or wasn't charged as an element of the offense I think is the same. And that argument was rejected by *Wallace*. And *Wallace* leads this Court to conclude that the Armed Career Criminal Act does in fact apply in this case because the criminal confinement charge contains the potential of physical violence. . . .

R. 52 at 19.

When it followed *Wallace* to this conclusion, the district court did not have benefit of our later opinion in *Hagenow*, which was released shortly after Gilbert's sentencing. *Hagenow* dealt with the very crime at issue here—the Indiana offense of criminal confinement. But in view of the way that Indiana defines that offense, we rejected the notion that there is an inherent risk of violence in the crime:

[C]riminal confinement under Indiana law does not necessarily involve conduct that presents a "serious risk of potential injury to another." One could, for example, confine another person without consent in a manner that, although unpleasant, does not present "a serious risk potential risk of injury" to the other.

423 F.3d at 644. *Hagenow*'s holding obviously is inconsistent with the district court's treatment of Gilbert's prior conviction for criminal confinement.

The government, conceding that *Hagenow* is controlling, urges us to overrule rather than follow that precedent here. The government believes that *Hagenow* is inconsistent with *Wallace*, in that the essence of both criminal confinement and unlawful restraint is holding someone against his or her will, and both crimes thus present the possibility that the victim will resist and cause the encounter to become violent. *Hagenow*, in the government's view, overlooked this possibility.

The government's argument might gain traction if Gilbert had been convicted under the first section of the Indiana statute, which involves the restraint of an individual without her consent. *See Pyle*, 476 N.E.2d at 127; *Addis*, 404 N.E.2d at 61. Although *Hagenow* rightly observed someone can commit criminal confinement by restraining a person in a way that is unlikely to injure that person, *Wallace*'s reasoning nonetheless could lead one to conclude that because the restraint is involuntary, the victim might resist, and that possibility in turn presents risk of injury. *See Wallace*, 326 F.3d at 887. In that regard, one might say that *Wallace* and *Hagenow* are in tension with one another. But Gilbert, as we know, was not charged under the first section of the statute but rather the second, which involves removing a person from one place to another; and that section of the statute expressly envisions that the removal can be accomplished through fraud or enticement rather than by the use of force or threat to overcome the victim's will. Thus, as Gilbert argues, the second section of the statute does not necessarily involve action taken against the victim's consent, as unlawful restraint does. *E.g.*, *Addis*, 404 N.E.2d at 61 ("lack of consent is not an element of confinement under section two"). *Cf. United States v. Riva*, 440 F.3d 722, 724-25 (5th Cir. 2006) (2-1 decision) (concluding that Texas crime of unlawful restraint of minor presents risk of injury even if victim was lured into the restraint by deception, because offense as defined necessarily en-

tails involuntary restraint of victim); *Dickson v. Ashcroft*, 346 F.3d 44, 49-51 (2d Cir. 2003) (New York offense of unlawful imprisonment of competent adult, even if accomplished by deception, necessarily involves use or potential use of force to overcome victim's will); *United States v. Kaplansky*, 42 F.3d 320, 324 (6th Cir. 1994) (en banc) (Ohio offense of kidnapping necessarily presents risk of injury, even if effectuated by deception, because "the essence of kidnapping is requiring another to do something against his or her will" and there is always a possibility that the victim will discover what is happening and resist).

Tricking someone into moving voluntarily from one place to another does not present the same danger of violent confrontation that involuntarily restraining him or her might. For example, as we posited at oral argument, a store owner might be lured off the premises on a pretense so that the store could be robbed in his absence; his removal (presumably) would amount to criminal confinement as defined in section 2 of the Indiana statute, but the crime would not present the same inherent risk of injury that physically restraining him would. *Cf. Williams*, 634 N.E.2d 849 (false story used to persuade child visitation monitor to authorize, and join, mother on drive with children). It is possible, of course, that the store owner might become angry on discovering the deceit and confront the perpetrator (if he could be found). But that risk is present in all manner of frauds and swindles; the possibility that the victim will blow his stack and punch the felon in the face does not transform the crime into one of violence. *See United States v. Rutherford*, 54 F.3d 370, 375 (7th Cir. 1995) (applying Guidelines § 4B1.2) ("there must be evidence that the crime, by its nature, presents a substantial risk" of harm).

The non-violent scenario we have imagined does not rule out the possibility that the usual way in which a person is removed from one place to another without resort to force or threat of force nonetheless does present a substantial

risk of injury. *See Wallace*, 326 F.3d at 887. Counsel for neither party has presented us with any information on what the norm is for removing a person through fraud or enticement. (Gilbert's counsel commendably went in search of reported data, but came up empty-handed.) There is no published legislative history in Indiana, *see LTV Steel Co. v. Northwest Eng'g & Constr., Inc.*, 41 F.3d 332, 335 (7th Cir. 1994) (citing *McMunn v. Hertz Equip. Rental Corp.*, 791 F.2d 88, 92 (7th Cir. 1986)), so we do not know whether there was a particular scenario(s) at which this portion of the statute was aimed. The modest number of published appellate opinions on removals accomplished by fraud or enticement deal with two types of scenarios: child stealing by a parent in violation of another parent's custodial rights, *see Williams*, 634 N.E.2d 849; *McNeely v. State*, 391 N.E.2d 838 (Ind. App. Ct. 1979) (predecessor to 35-42-3-3(a)(2)), and luring the victim to a different location in order to commit a sexual offense or indulge the perpetrator's prurient interests, *see Brown v. State*, 848 N.E.2d 699 (Ind. App. Ct. 2006) (victims lured to perpetrator's home and convinced to disrobe); *Wise*, 635 N.E.2d 221 (victim lured into motel room, where she was sexually assaulted by her stepfather); *Harbison*, 452 N.E.2d 943 (victim lured to remote location, where he was sexually assaulted). With respect to the second set of cases, one might argue that removal of the victim to a remote or secluded location, although accomplished peacefully, renders the victim more vulnerable to a violent felony such as sexual assault. That argument has not been made here, however; moreover, we have no way of knowing how representative that scenario is of the universe of removals by fraud or enticement that occur in Indiana. The statute itself does not require that the removal be animated by an intent to commit another crime, for example. *Cf.* Ohio Rev. Code Ann. § 2905.01(2) (proscribing the removal of person from place where found for purpose of "facilitating the commission of any felony or flight thereafter"). In sum, absent

data revealing that there is a serious risk of injury associated with criminal confinement even when accomplished through trickery, we are in no position to overrule *Hagenow* and say that the crime categorically presents such a risk.

### III.

The record does not disclose that Gilbert was convicted of a form of criminal confinement that required a finding of force or threat of force. The Indiana criminal confinement statute expressly recognizes that the offense can be committed through non-violent means such as fraud or enticement, and as we concluded in *Hagenow*, there is nothing about the offense as defined that poses an inherent risk of serious physical injury to another even when the crime is committed without resort to force. The district court therefore erred in treating Gilbert's prior conviction for criminal confinement as a conviction for a crime of violence. Gilbert's sentence is VACATED, and the case is REMANDED for resentencing consistent with this opinion.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*