In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-2037

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRIAN K. BILLUPS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 06 CR 213—**Barbara B. Crabb**, *Chief Judge.*

_____

ARGUED APRIL 3, 2008—DECIDED JULY 29, 2008

_____

Before FLAUM, MANION, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Brian Billups was convicted of a drug crime and sentenced as a career offender under U.S.S.G. § 4B1.1(a), based in part on a prior Wisconsin felony conviction for false imprisonment. The career offender designation increased Billups's total offense level and resulted in an advisory guidelines imprisonment range of 151-188 months. The district court sentenced Billups to 151 months of imprisonment and three years of supervised release. On appeal, Billups challenges his career offender designation, arguing that his false imprisonment conviction was not a "crime of violence"

under U.S.S.G. § 4B1.2(a). Because we agree with the district court's determination that the Wisconsin offense constitutes a crime of violence, we affirm.

## I.  Background

Billups sold cocaine in Madison, Wisconsin. He pled guilty, pursuant to a plea agreement, to possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). The presentence report indicated, and the district court found at sentencing, that Billups was a career offender, U.S.S.G. § 4B1.1(a), based upon two prior felony convictions, one for delivery of a controlled substance and one for false imprisonment. Billups's career offender status increased his total offense level, which incorporated a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, from 25 to 29. This increase, when combined with Billups's category VI criminal history score, triggered a corresponding increase in the recommended imprisonment range, from 110-137 to 151-188 months. The district court found that "a sentence at the low end of the advisory guideline range when coupled with the maximum term of supervised release is reasonable, necessary, and sufficient to protect the community, provide just punishment, and achieve parity with the sentences of similarly situated offenders." Accordingly, the court sentenced Billups to 151 months of imprisonment, three years of supervised release, and a $100 special assessment.

Billups now appeals his sentence, contending that the district court erred in classifying him as a career offender. Because his instant offense was a controlled substance offense, and because he was at least eighteen years old at

the time he committed the offense, Billups was properly classified as a career offender if he had "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Billups concedes that his prior felony conviction for delivery of a controlled substance qualifies as a controlled substance offense. However, he contests the categorization of his Wisconsin false imprisonment conviction, under Wis. Stat. § 940.30, as a "crime of violence" for purposes of §§ 4B1.1(a), 4B1.2(a). Thus, the sole issue on review is the classification of Billups's false imprisonment conviction as a crime of violence.

## II. Discussion

A crime of violence is an offense punishable by more than one year of imprisonment that: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another"; or (2) "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a). The crime-of-violence determination is a legal inquiry into the nature of the conviction, not a factual inquiry into the underlying conduct of the defendant. *United States v. Peters*, 462 F.3d 716, 719 (7th Cir. 2006). Thus, in determining whether a prior conviction qualifies as a crime of violence, "we start—and usually will end—with the elements of the statute of conviction and the facts as stated in the charging document." *United States v. Newbern*, 479 F.3d 506, 508 (7th Cir. 2007) (citation omitted). However, where the statutory elements and the charging document fail to resolve the issue, we may then look to additional sources, including the written plea agreement,

the transcript of the plea colloquy, admissions by the defendant, or comparable judicial records. *Peters*, 462 F.3d at 719 (citing *Shepard v. United States*, 544 U.S. 13, 16 (2005)); *Newbern*, 479 F.3d at 508.

Because the instant charging document—alleging that Billups did "intentionally restrain[ ] another . . . without that person's consent and with knowledge that he had no lawful authority to do so"—offers little beyond the statutory language, we first focus on that statutory language. *See Newbern*, 479 F.3d at 508 (crime-of-violence inquiry ordinarily begins and ends with statutory elements and charging document). The false imprisonment statute, Wis. Stat. § 940.30, provides, "Whoever intentionally confines or restrains another without the person's consent and with knowledge that he or she has no lawful authority to do so is guilty of a Class H felony." The statute does not have as a requisite element the use, attempted use, or threatened use of physical force. U.S.S.G. § 4B1.2(a)(1). Nor is it burglary, arson, or extortion, and it does not involve the use of explosives. U.S.S.G. § 4B1.2(a)(2). Therefore, the sole question, and the crux of the current appeal, is whether Wisconsin's false imprisonment offense "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id*.

The district court concluded that the Wisconsin false imprisonment offense does present such a risk. At sentencing, Billups pointed out that the offense does not have a statutory element involving the use or threat of force. In addition, he directed the court's attention to the Wisconsin jury instructions, which indicate that confinement or restraint may be achieved without the use of physical force. However, the court rejected this argument, and explained:

> It seems to me . . . that any time that you have one person exercising power over another person, whether it's by physical force, words, threats, that there is an inherent risk of serious potential injury. The person [who is] restrained may not want to be restrained and may react by causing injury. The person—if the person does try to leave, get out, get away, get out from under the restraint of the person that's imposing the restraint, that person may resort to physical means even if he or she hasn't done so before that. So it just seems to me to connote a dangerous situation and dangerous to the victim in particular when the person restrains the victim somehow in a car, moving car, in a room, in a place, any time when the person's freedom of movement is being restricted for no lawful reason.

Thus, the court concluded that the offense "involves conduct that presents a serious potential risk of physical injury to another," § 4B1.2(a)(2), rendering it a crime of violence and Billups a career offender pursuant to § 4B1.1(a).

Before turning to the merits of Billups's challenge to this determination, we must resolve a dispute regarding the standard of review. Ordinarily, our review of the district court's career offender determination, as well as the underlying crime-of-violence determination, is de novo. *United States v. Kindle*, 453 F.3d 438, 440 (7th Cir. 2006). However, the government argues that we should review only for plain error. At sentencing, Billups made the same overall argument that he makes here—that his false imprisonment conviction should not be classified a crime of violence. However, whereas in the district court he relied primarily upon the Wisconsin jury instruc-

tions for the false imprisonment offense and the absence of a statutory element involving the use of force, here he introduces the statutory definition of "without consent" as additional support for his argument. The government argues that because the statutory definition of "without consent" was not before the district court, Billups forfeited that aspect of his challenge, limiting our review to plain error. We disagree. Billups's challenge below was sufficient to preserve his current argument, even if he offers a new twist on that argument based upon additional authority on appeal. *See Bew v. City of Chicago*, 252 F.3d 891, 895-96 (7th Cir. 2001) (citing *Yee v. City of Escondido*, 503 U.S. 519, 534-35 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below.")). Therefore, we review de novo both the district court's career offender determination and the underlying crime-of-violence determination. *Kindle*, 453 F.3d at 440.

Turning to the merits of Billups's challenge, he contends that the commission of the Wisconsin false imprisonment offense does not invariably pose a risk of physical harm to the victim, because the victim's confinement may be effected through deception or fraud, rather than force. In this respect, Billups analogizes the offense to Indiana's criminal confinement offense, which we have held is not necessarily a crime of violence. *United States v. Gilbert*, 464 F.3d 674, 682 (7th Cir. 2006); *United States v. Hagenow*, 423 F.3d 638, 644 (7th Cir. 2005). Under Indiana law, a person commits criminal confinement where he either "confines another person without the other person's consent," Ind. Code § 35-42-3-3(a)(1), or "removes another person by fraud, enticement, force, or threat of force, from

one (1) place to another," Ind. Code § 35-42-3-3(a)(2). In *Hagenow*, we held that, because one could commit the offense "in a manner that, although unpleasant, does not present 'a serious potential risk of physical injury' to the other," the Indiana offense is not, on its face, a crime of violence. 423 F.3d at 644. We elaborated on this holding in *Gilbert*, explaining that because the Indiana criminal confinement statute "expressly recognizes that the offense can be committed through non-violent means such as fraud or enticement . . . there is nothing about the offense as defined that poses an inherent risk of serious physical injury to another even when the crime is committed without resort to force." 464 F.3d at 682. Thus, we have determined that Indiana's criminal confinement offense is not necessarily a crime of violence for purposes of § 4B1.2(a).

Billups points out that Wisconsin's false imprisonment offense can also be committed without resort to force; therefore, he argues, it too should not receive categorical treatment as a crime of violence. Under Wisconsin law, false imprisonment must be effected "without the [victim]'s consent," but the term "without consent" embraces both an absence of consent in fact *and* consent that is obtained pursuant to deceit or a mistake of fact:

> "Without consent" means no consent in fact or that consent is given for one of the following reasons:
>
> (a) Because the actor put the victim in fear by the use or threat of imminent use of physical violence on the victim, or on a person in the victim's presence, or on a member of the victim's immediate family;
>
> (b) Because the actor purports to be acting under legal authority; or

(c) Because the victim does not understand the nature
of the thing to which the victim consents, either by
reason of ignorance or mistake of fact or of law other
than criminal law or by reason of youth or defective
mental condition, whether permanent or temporary.

Wis. Stat. § 939.22(48). Because false imprisonment may
involve consent procured through trickery—e.g., pretend-
ing to act under legal authority, § 939.22(48)(b), or other-
wise deceiving the victim so that consent is given pursuant
to a mistake of fact, § 939.22(48)(c)—Billups argues that,
like the Indiana criminal confinement offense, the Wis-
consin offense does not categorically present a serious
potential risk of physical injury to the victim.

The government disagrees, and instead directs our
attention to our earlier decision regarding Illinois's unlaw-
ful restraint offense in *United States v. Wallace*, 326 F.3d
881 (7th Cir. 2003). There we held, based on statutory
language identical to that found in the residual clause of
§ 4B1.2(a)—"otherwise involves conduct that presents a
serious potential risk of physical injury to another"—that
Illinois's unlawful restraint offense constitutes a "violent
felony" for purposes of the Armed Career Criminal Act
(ACCA), 18 U.S.C. § 924(e).[1] *Wallace*, 326 F.3d at 887. The

---

[1] Because the ACCA and the residual clause of § 4B1.2(a) use
identical language—"otherwise involves conduct that pre-
sents a serious potential risk of physical injury to another"—
we have interpreted the two provisions as compelling the same
result. *United States v. Rosas*, 410 F.3d 332, 335-36 (7th Cir. 2005);
*see, e.g., United States v. Upton*, 512 F.3d 394, 404 (7th Cir. 2008)
(concluding that the court's earlier determination that posses-
sion of a sawed-off shotgun was a crime of violence under the
(continued...)

Illinois Criminal Code defines unlawful restraint as the knowing detention of another without legal authority, but does not specify whether violence must be used to effect the detention. *See id.* at 886 (quoting 720 Ill. Comp. Stat. 5/10-3 (2003)). We rejected the defendant's argument that, because unlawful restraint might be accomplished through nonviolent means, the offense does not present a serious potential risk of injury to the victim. We explained that, because the statute focuses on the *potential* for physical injury, "the benchmark should be the possibility of violent confrontation, not whether one can postulate a nonconfrontational hypothetical scenario." *Wallace*, 326 F.3d at 887 (internal quotation marks and citation omitted). Even if the victim were detained without the use or threat of violence, we reasoned, an escape attempt might still result in a violent confrontation between assailant and victim. Therefore, we concluded that "a situation where one person restrains another against his or her will presents a 'serious potential risk of physical injury,' whether it be in the initial restraint or the possible resulting confrontation between assailant and victim if the victim attempts to leave." *Id.*

On Billups's view, *Wallace* involved an offense that *always* presents a serious potential risk of physical injury to the victim, whereas *Hagenow* and *Gilbert* involved an offense that might *sometimes* be committed without posing such a risk. Thus, the reasoning goes, if there is any factual scenario in which an offense can be committed without posing a serious risk of physical harm to the

---

[1] (...continued)
Sentencing Guidelines compelled the same conclusion under the ACCA), petition for cert. filed, (U.S. Mar. 31, 2008) (No. 07-10234).

victim, that offense is not (categorically) a crime of violence for purposes of §§ 4B1.1(a), 4B1.2(a). We disagree. The "serious potential risk" language of the residual clause of § 4B1.2(a) is indicative of probability, rather than inevitability; therefore, an offense need not pose a serious risk of harm in *every* conceivable factual manifestation in order to constitute a crime of violence. *Cf. United States v. Vanhook*, 510 F.3d 569, 575 (6th Cir. 2007) ("[A] determination that 'most instances of an offense involve a serious potential risk of injury' is sufficient to support the conclusion that the crime constitutes a violent crime under the 'otherwise clause.'" (quoting *United States v. Johnson*, 246 F.3d 330, 333 (4th Cir. 2001))), petition for cert. filed, (U.S. Mar. 13, 2008) (No. 07-9936). However, this does not resolve the issue of just how probable "physical injury to another" must be for an offense to satisfy § 4B1.2(a). For guidance in addressing this issue, we turn to the Supreme Court's recent decision in *James v. United States*, ___ U.S. ___, 127 S. Ct. 1586, 167 L.Ed.2d 532 (2007).

In *James*, the Court held that the offense of attempted burglary, as defined by Florida law, is a "violent felony"—i.e., an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another"—under the ACCA.[2] Most important for present purposes, the Court expressly rejected the petitioner's argument that, in order to be classified as a violent felony,

---

[2] As previously noted, because the relevant language— "otherwise involves conduct that presents a serious potential risk of physical injury to another"—in the ACCA and the residual clause of U.S.S.G. § 4B1.2(a) is identical, we have treated that language as compelling identical results. *See* note 1, *supra*.

the attempted burglary offense must *always* involve a serious potential risk of injury. The Court explained that not "every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." *James*, 127 S. Ct. at 1597 (noting that "potential" and "risk" are "inherently probabilistic concepts," and their combination "suggests . . . possibilities even more contingent or remote than a simple 'risk,' much less a certainty"). The Court noted that even a specifically enumerated violent offense, such as extortion, does not, in every conceivable case, present a serious potential risk of physical harm to another. *Id.* (For example, where "an anonymous blackmailer threatens to release embarrassing personal information about the victim unless he is mailed regular payments . . . the risk of physical injury to another approaches zero," but this "does not mean that the offense[ ] of . . . extortion [is] categorically nonviolent."). Thus, the Court explained, "the proper inquiry is whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another." *Id.* (emphasis added).

We have little trouble concluding that, in the ordinary case, Wisconsin's false imprisonment offense poses just such a risk. The statute can be violated in essentially four ways. The first type of violation envisioned by the statute is one in which the victim does not consent in fact to his confinement or restraint. Wis. Stat. §§ 940.30, 939.22(48). In such a circumstance, the potential for violent confrontation is obvious and significant, because a non-consenting victim is, by definition, one who resists confinement. *See United States v. Zamora*, 222 F.3d 756, 764-65 (10th Cir. 2000) (concluding that New Mexico false

imprisonment offense, which involves confinement or restraint of non-consenting victim, is crime of violence under U.S.S.G. §§ 4B1.1, 4B1.2(a)), *cert. denied*, 531 U.S. 1043 (2000). The second type of violation involves a victim who consents only because the perpetrator "put the victim in fear by the use or threat of imminent use of physical violence on the victim, or on a person in the victim's presence, or on a member of the victim's immediate family." Wis. Stat. § 939.22(48)(a). Again, the potential for violent confrontation is clear where the perpetrator threatens force against the victim or his family. Indeed, if the scope of the offense were limited to these two factual scenarios, Billups's argument would merit little discussion. However, the offense also embraces consent obtained by means other than the threat of force, and this requires further analysis.

The third type of violation involves a perpetrator who obtains the victim's consent by purporting to act under legal authority. Wis. Stat. § 939.22(48)(b). The potential for violence diminishes somewhat where the victim consents not based on a threat of force, but because he erroneously believes that the perpetrator possesses lawful authority. Nevertheless, the risk remains substantial, because the victim may discover that the perpetrator lacks legal authority and then resist. *Cf. United States v. Kaplansky*, 42 F.3d 320, 324 (6th Cir. 1994) (finding that Ohio attempted kidnapping offense, even where accomplished by deception, presents inherent risk of violence due to "the ever-present possibility that the victim may figure out what's really going on and decide to resist").

Finally, the victim may consent because he "does not understand the nature of the thing to which [he] consents, either by reason of ignorance or mistake of fact or of law

other than criminal law or by reason of youth or defective mental condition, whether permanent or temporary." Wis. Stat. § 939.22(48)(c). This provision appears to encompass two distinct scenarios. In the first, the victim consents to his confinement based on some mistaken belief, perhaps resulting from deception by the perpetrator. Again, the potential for violent confrontation remains substantial, despite the victim's initial consent, because the victim may discover the ruse (or his own mistake) and resist. *See Dickson v. Ashcroft*, 346 F.3d 44, 49-51 (2d Cir. 2003) (concluding that New York offense of unlawful imprisonment of competent adult, even where accomplished by deception, involves substantial risk of violence); *Kaplansky*, 42 F.3d at 324 (concluding that Ohio attempted kidnapping offense, even where accomplished by deception, involves substantial risk of violence because victim may discover the ruse and resist); *cf. United States v. Riley*, 183 F.3d 1155, 1159 (9th Cir. 1999) (rejecting argument that, because Louisiana "simple rape" offense could be accomplished by trickery or deception, it is not a crime of violence).

Alternatively, in the second scenario, the victim may be unable to give meaningful consent because, for instance, the victim is a child. *See, e.g., State v. Teynor*, 414 N.W.2d 76, 82 (Wis. App. 1987). A child may be less able and less inclined to physically resist, reducing the risk of violent confrontation. However, the child who shies away from confrontation might nonetheless attempt to escape confinement, potentially resulting in physical injury. *See United States v. Riva*, 440 F.3d 722, 724-25 (5th Cir. 2006) (finding that unlawful confinement of a child under the age of 17 by means of deception creates serious potential risk of physical injury because, for instance, the child

might attempt escape). We need not decide whether the child-confinement scenario necessarily entails a "serious potential risk of physical injury to another." Even assuming that it does not, our conclusion remains unaltered; that there exists a single possible way, among many, to commit the offense without posing a serious risk of injury to another does not mean that, in the ordinary case, the offense does not present such a risk. *See James*, 127 S. Ct. at 1597; *Wallace*, 326 F.3d at 886-87.

Our conclusion is consistent with *Hagenow* and *Gilbert*. Significantly, the Indiana criminal confinement statute at issue there was neatly divisible, presenting two distinct routes to conviction: (1) confinement of another without his consent, Ind. Code § 35-42-3-3(a)(1); or (2) removal of another person by fraud, enticement, or the use or threat of force from one place to another, Ind. Code § 35-42-3-3(a)(2). As *Gilbert* recognized, a conviction under the first section of the statute, which involves *confinement* of the victim without his consent, might present an inherent risk of resistance, and thus violence. *Gilbert*, 464 F.3d at 680-81 (noting that, with respect to the first section of the Indiana statute, "*Wallace*'s reasoning . . . could lead one to conclude that because the restraint is involuntary, the victim might resist, and that possibility in turn presents a risk of injury"). However, the second section of the statute, involving *removal* rather than confinement or restraint, does not necessarily pose the same risk; "[t]ricking someone into moving voluntarily from one place to another does not present the same danger of violent confrontation that involuntarily restraining him or her might." *Id.* at 681. In *Gilbert*, because the defendant had been charged and convicted under the second section of the statute, we could not conclude that he had been convicted of a crime of violence. *Id.*

Wisconsin's false imprisonment offense differs from the Indiana criminal confinement offense in two critical respects. First, even in its most innocuous factual incarnation, the Wisconsin offense is inherently more coercive, because it must involve *confinement* or *restraint* and cannot be accomplished simply by "[t]ricking someone into *moving* voluntarily from one place to another." *Gilbert*, 464 F.3d at 681 (emphasis added). Indeed, in this respect, the Wisconsin offense is akin to the Illinois unlawful restraint offense that we deemed a crime of violence in *Wallace*. 326 F.3d at 886 (unlawful restraint occurs when the perpetrator "knowingly without legal authority *detains* another" (quoting 720 Ill. Comp. Stat. 5/10-3 (2003) (emphasis added))). Second, the Wisconsin statute is not neatly divisible into two components; rather, the "without consent" element, which is defined in a separate statute, embodies several alternative scenarios, only one of which *might* not reflect a serious risk of injury to the victim. Thus, while it is difficult to conclude that the Indiana offense, *in the ordinary case*, presents a serious potential risk of injury to the victim, just the opposite is true of Wisconsin's false imprisonment offense; the low-risk scenario appears to be the outlier. Accordingly, we reject Billups's contention that the Wisconsin offense is analogous to the Indiana criminal confinement offense at issue in *Hagenow* and *Gilbert*.

Our crime-of-violence determination is also consistent with the Supreme Court's recent decision in *Begay v. United States*, ___ U.S. ___, 128 S. Ct. 1581, 170 L.Ed.2d 490 (2008), which held that New Mexico's felony offense of driving under the influence of alcohol (DUI), a strict liability crime, is not a violent felony within the meaning of the ACCA. The Court accepted the lower court's conclusion

that a DUI offense "presents a serious risk of physical injury to another." *Begay*, 128 S. Ct. at 1584. However, the Court found that the DUI offense lacked the sort of "purposeful, violent, and aggressive" conduct exemplified by those enumerated crimes—burglary, arson, and extortion—immediately preceding the "otherwise involves" residual clause. *Id.* at 1586-88; 18 U.S.C. § 924(e)(2)(B)(ii). Therefore, the Court concluded, the New Mexico DUI offense was not a violent felony under the ACCA.

Although the *Begay* holding is limited to the ACCA's definition of violent felony, the Court's reasoning supports our conclusion here with respect to the residual clause of U.S.S.G. § 4B1.2(a). Unlike a DUI offense, which may be committed without criminal intent, false imprisonment always involves purposeful behavior and typically involves aggressive, violent behavior. In this respect, it is similar to those enumerated crimes—burglary of a dwelling, arson, and extortion—immediately preceding the "otherwise involves" residual clause of § 4B1.2(a). Moreover, the commentary to § 4B1.2 indicates that the term "crime of violence" also includes kidnapping, an offense involving conduct remarkably similar to that involved in false imprisonment. U.S.S.G. § 4B1.2 cmt. n.1 (2006). *Compare* Wis. Stat. § 940.30 (Wisconsin false imprisonment statute), *with* Wis. Stat. § 940.31 (Wisconsin kidnapping statute). Thus, our crime-of-violence determination is buttressed by the Court's decision in *Begay*.

Finally, we note that even if the Wisconsin false imprisonment offense did not *categorically* constitute a crime of violence, an alternative ground would still support our decision. At sentencing, Billups effectively conceded that his false imprisonment conviction involved violence,

including actual injury to another, when his counsel represented that "Mr. Billups was found guilty of a [misdemeanor] battery charge at the same time he was found guilty of the false imprisonment *arising out of all of the same acts*" (emphasis added). *See* Wis. Stat. § 940.19 (misdemeanor battery involves "caus[ing] bodily harm to another"). Under *Shepard v. United States*, 544 U.S. 13 (2005), our prior-conviction crime-of-violence enquiry is "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was *confirmed by the defendant*, or to *some comparable judicial record* of this information." *Kindle*, 453 F.3d at 442 (quoting *Shepard*, 544 U.S. at 26 (emphasis added in *Kindle*)). We have explained that, although "[c]ourts are not permitted to make assumptions nor conduct proceedings or investigations" to ascertain the conduct involved in a previous conviction, "if a defendant offers an admission in court papers or colloquy . . . the proper enquiry into the previous conviction no longer matters because the answer is in the form of an admission in the record." *Kindle*, 453 F.3d at 442. Thus, in *Kindle*, the district court was permitted to rely upon the defendant's plea agreement and his representations to the court at sentencing in concluding that his second-degree burglary conviction constituted a "crime of violence" under U.S.S.G. § 4B1.2. *Id.* Here, where Billups's counsel represented at sentencing that the battery and false imprisonment convictions arose out of "all of the same acts," it is difficult to imagine how the former, but not the latter, offense involved violence and bodily injury to another. The district court was not required to ignore this admission. *Cf. Kindle*, 453 F.3d at 441 ("[The defendant's] argument that an admission in court papers or in plea agreements should

be ignored is, as we said at oral argument, striking."). Therefore, Billups's admission at sentencing provides an alternative basis for our decision.[3]

### III. Conclusion

To recap, we conclude that, in the ordinary case, the Wisconsin false imprisonment offense, Wis. Stat. § 940.30, involves purposeful, aggressive conduct that presents "a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a). Therefore, the offense is a crime of violence, and the district court properly designated Billups as a career offender under U.S.S.G. § 4B1.1(a) in determining the advisory guidelines imprisonment range. Accordingly, Billups's sentence is AFFIRMED.

---

[3] Billups raises one additional argument regarding a prior Wisconsin misdemeanor battery conviction for which he was subject to prosecution under Wisconsin's habitual criminality statute, fearing that the government might contend the potential penalty enhancement would make this misdemeanor offense eligible for a crime-of-violence designation. But the government does not present such a contention, not even in the alternative, so we do not need to address it.