**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-4625

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

SAMMY LEE ELLIS, JR.,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Spartanburg.  Timothy M. Cain, Chief District Judge.  (7:22-cr-00396-TMC-1)

Argued:  October 30, 2024                                   Decided:  March 11, 2025

Before WILKINSON and BERNER, Circuit Judges, and Brendan A. HURSON, United States District Judge for the District of Maryland, sitting by designation.

Affirmed by published opinion. Judge Berner wrote the opinion, in which Judge Wilkinson and Judge Hurson joined.

**ARGUED:** Emily Deck Harrill, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Michael G. Shedd, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:**  Adair F. Boroughs, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

BERNER, Circuit Judge:

Sammy Lee Ellis, Jr. had been drinking when he pulled out a gun and shot Lamar Gross in the abdomen. Gross is the son of Ellis's estranged fiancé Dionne Beatty. Ellis pled guilty to one count of illegally possessing a firearm and ammunition as a person who had previously been convicted of a felony. This is a crime under federal law. The U.S. Probation Office prepared a presentence investigation report that applied a cross-reference to attempted murder under the U.S. Sentencing Guidelines. Over Ellis's objections, the district court applied this cross-reference, which became the operative base offense level for purposes of Ellis's sentencing.

Ellis raises two arguments on appeal. First, he contends that the district court erred in failing to consider the federal defense of voluntary intoxication to attempted murder that he argues would preclude application of the attempted murder cross-reference. Second, he contends that there was insufficient evidence to support the use of the attempted murder cross-reference in his case. Ellis asks this court to vacate his sentence and remand for resentencing.

For the reasons set forth below, we conclude that the district court correctly applied the attempted murder cross-reference and that there was substantial evidence to support the district court's conclusion that Ellis's shooting of Gross amounted to attempted murder under the Sentencing Guidelines. Accordingly, we affirm.

## I. Background

### A. Factual History

Sammy Lee Ellis, Jr. and his former fiancé Dionne Beatty had a tumultuous relationship. They fought a lot, both verbally and physically. When Ellis shot Beatty's son Lamar Gross, Gross lived with his mother in her apartment. Although Ellis had also intermittently lived with Gross and Beatty in the past, Ellis was not living with them when the shooting took place. Beatty had repeatedly tried to sever her relationship with Ellis, but Ellis refused to leave Beatty and Gross alone. Beatty decided it was time to obtain a restraining order against Ellis.

On the day of the shooting, Gross left Beatty's apartment to get his car to drive his mother to go secure a restraining order. As he was leaving the apartment, Gross encountered Ellis lurking at the bottom of a stairwell outside. Gross testified that Ellis looked and sounded drunk and smelled of alcohol. Gross observed a large bottle of beer next to Ellis. Ellis acknowledged that he had been drinking.

Although Gross attempted to ignore Ellis, Ellis spoke to him anyway. Ellis asked Gross whether Beatty was still angry with him. Gross replied that she was. Ellis then said "he was going to hit the man upstairs." J.A. 86. Although Gross indicated that it was not clear what Ellis meant by "hit," Gross later testified that he believed this meant that Ellis intended to shoot a man who lived in an upstairs apartment. The conversation quickly spiraled. Gross told Ellis that "he was crazy and was going to jail." J.A. 86. Ellis then began yelling and arguing with Gross, and Gross replied by telling Ellis something along the lines of, "yo, you're really going to get yourself arrested." J.A. 96.

3

Ellis then pulled out a gun and shot Gross once in the abdomen. Ellis was about ten feet away from Gross at the time of the shooting. At his detention hearing, Ellis admitted that he shot Gross but insisted that he did so accidentally and never pointed the gun at Gross. Ellis did, however, concede that the barrel "obviously" must have been pointed in the direction of Gross for him to have been shot. J.A. 26. Gross sustained serious injuries. He underwent surgery and remained hospitalized for two days following the shooting.

Ellis was charged under South Carolina state law with attempted murder and possession of a firearm during a violent crime. A federal grand jury later indicted Ellis on one federal count of being a felon in possession of a firearm and ammunition, because Ellis had been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

## B. Procedural History

Ellis pled guilty to the federal charge without a plea agreement. The U.S. Probation Officer (USPO) assigned to his case issued a presentence investigation report (PSR) calculating a U.S. Sentencing Guidelines (Guidelines) range of 97 to 120 months' imprisonment.

Some background is helpful as we consider the role of the relevant Guidelines and cross-references. The governing Guideline to determine the base level for a defendant, like Ellis, who unlawfully possessed a firearm and ammunition, is U.S.S.G. § 2K2.1(a)(6)(A) (the firearms or ammunition Guideline).[1] The firearms or ammunition Guideline contains

---

[1] All references are to the 2021 Sentencing Guidelines, which were in effect at the time of Ellis's sentencing. *See, e.g.*, *Peugh v. United States*, 569 U.S. 530, 537–38 (2013); 18 U.S.C. § 3553(a)(4)(A)(ii); U.S.S.G. § 1B1.11(a).

4

a cross-reference provision, U.S.S.G. § 2K2.1(c)(1) (the firearms or ammunition cross-reference). This cross-reference applies if the defendant "used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense." U.S.S.G. § 2K2.1(c)(1). Relevant to Ellis's case, if the defendant used a firearm or ammunition to commit "another offense," then the firearms or ammunition cross-reference directs the court to apply U.S.S.G. § 2X1.1 (the attempt Guideline), with respect to that other offense "if the resulting offense level is greater than that determined" under the firearms or ammunition Guideline. U.S.S.G. § 2K2.1(c)(1)(A). The attempt Guideline contains its own cross-reference provision. That cross-reference directs the court to apply the Guideline that governs the specific offense if that offense is "expressly covered by another [G]uideline section." U.S.S.G. § 2X1.1.

Based on Ellis's attempted murder charge, the USPO applied the Guideline for attempted murder, U.S.S.G. § 2A2.1(a) (the attempted murder Guideline). The attempted murder Guideline sets a higher base offense level "if the object of the offense would have constituted first degree murder" and a lower offense level if the object of the offense is not first degree murder. U.S.S.G. § 2A2.1(a). A comment to the attempted murder Guideline explains that "[f]irst degree murder means conduct that, if committed within the special maritime and territorial jurisdiction of the United States, would constitute first degree murder under 18 U.S.C. § 1111." U.S.S.G. § 2A2.1 cmt. n.1. The federal first degree murder statute defines murder as "the unlawful killing of a human being with malice aforethought," and "[a]ny other murder" as second degree murder. 18 U.S.C. § 1111(a).

5

We will refer to the USPO's application of the attempted murder Guideline through the firearms or ammunition cross-reference as the attempted murder cross-reference. The USPO determined that the base offense level for attempted murder was 27. The USPO also applied a four-level enhancement under the attempted murder Guideline because Gross "sustained     permanent     or     life-threatening     bodily     injury."     2 J.A. 175; U.S.S.G. § 2A2.2(b)(1)(A). In total, the attempted murder Guideline produced an offense level of 31, which was higher than Ellis's calculated base offense level for the firearms or ammunition Guideline. Accordingly, the USPO used the attempted murder Guideline to calculate Ellis's offense level pursuant to the attempted murder cross-reference.

Ellis objected to the PSR on the ground that the attempted murder cross-reference was inapplicable. Ellis claimed that he shot Gross accidentally, and therefore lacked the requisite intent for attempted murder. The district court overruled this objection. At Ellis's sentencing hearing, the district court concluded that the attempted murder cross-reference applied, regardless of whether the attempted murder definition was based on South Carolina or federal law. The district court found Gross's testimony to be "very credible," unlike Ellis's testimony at his detention hearing, which the district court found to be full of "self-serving statements." J.A. 125–26. The district court also concluded that there was sufficient evidence to support a finding that Ellis attempted to murder Gross. It based this finding on the "surrounding circumstances," "the history of the relationship" between Ellis and Beatty, Ellis "essentially lying in wait" for someone to leave the apartment, and Ellis's "conscious[ ] rack[ing]" of a "round into the chamber and pointing" the gun at Gross. J.A. 126. As the district court explained, "[i]t is reasonable to conclude that when a person

6

loads a live round into the firing chamber of a 9 millimeter pistol and points the pistol at another human being at close range and pulls the trigger," that person "intends to shoot and intends to kill the person on the other end[ ] of the gun." J.A. 126.

The district court did, however, sustain Ellis's objection to the application of an enhancement for permanent or life threatening bodily injury. It concluded that "the record does not support a finding of permanent or life-threatening bodily injury," but found "that the two-level increase for [Gross] having sustained a serious bodily injury is more appropriate." J.A. 127. Accordingly, the district court calculated Ellis's Guidelines range as 78 to 97 months' imprisonment and sentenced Ellis to 97 months' imprisonment and three years' supervised release. Ellis timely appealed.

## II.  Analysis

### A.  Intoxication Defense

"In determining whether a district court properly applied the advisory Guidelines, including application of any sentencing enhancements, we review the district court's legal conclusions *de novo* and its factual findings" under the clear error standard. *United States v. Layton*, 564 F.3d 330, 334 (4th Cir. 2009).

We begin by addressing the parties' disagreement regarding the relevant standard of review. Ellis contends that harmless error applies, while the Government contends that we should review for plain error. According to Ellis, his intoxication prevented him from forming the requisite mental state for attempted murder. Although this intoxication defense was not specifically raised before the district court, Ellis maintains that this argument is

7

merely a "new twist" on an argument that he made before the district court challenging the attempted murder cross-reference, and, therefore, it was properly preserved. Ellis Reply Br. 2 (quoting *United States v. Billups*, 536 F.3d 574, 578 (7th Cir. 2008)). We disagree. Ellis does not simply "offer[ ] a new twist"; he offers an altogether new argument. *See Billups*, 536 F.3d at 578.

Because it was not preserved, we review Ellis's claim under the plain error standard. Under the plain error standard, Ellis "has the burden of showing: (1) that an error was made, (2) that the error was plain, and (3) that the error affected his substantial rights." *United States v. Green*, 996 F.3d 176, 185 (4th Cir. 2021). If we find the district court erred, our decision on whether to correct that error "is discretionary, and we will exercise that discretion only if an error 'would result in a miscarriage of justice or would otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (citation omitted); *United States v. Olano*, 507 U.S. 725, 732 (1993).

The district court ruled that, under either the state statute or federal statute, the attempted murder cross-reference applies. Both state and federal defenses may be considered in challenging the applicability of a Guideline to attempted murder that took place in a state rather than one that took place "within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 1111(b); *see* U.S.S.G. § 2A2.1 cmt. n.1. The district court did not err in applying the attempted murder cross-reference because under the state statute for attempted murder, Ellis would not have a viable voluntary intoxication defense. We therefore need not address any claim of a federal intoxication defense.

8

At the time of sentencing, Ellis had been charged with attempted murder under South Carolina law. Under South Carolina law, a "person who, with intent to kill, attempts to kill another person with malice aforethought, either expressed or implied, commits the offense of attempted murder." S.C. Code § 16-3-29. Attempted murder is a specific intent crime, requiring proof that the defendant had the specific intent to kill. *E.g.*, *State v. King*, 810 S.E.2d 18, 22–23 (S.C. 2017). "[S]pecific intent means that the defendant consciously intended the completion of acts comprising the [attempted] offense." *Id.* (second alteration in original) (quoting *State v. Sutton*, 532 S.E.2d 283, 285 (S.C. 2000)). Under South Carolina law, voluntary intoxication, "where it has not produced permanent insanity, is never an excuse for or a defense to crime, regardless of whether the intent involved be general or specific." *State v. Vaughn*, 232 S.E.2d 328, 330 (S.C. 1977). Ellis makes no claim of "permanent insanity" nor was there evidence to suggest he was anything more than temporarily inebriated at the time of the shooting. Thus, Ellis could not avail himself of a voluntary intoxication defense, and the district court properly applied the attempted murder cross-reference.

Although the district court did not specifically reference Ellis's intoxication in its analysis of the applicability of the attempted murder cross-reference, it did consider the full context of the circumstances relating to the shooting, including Gross and Ellis's testimony about Ellis's intoxication. The record before the district court establishes that Ellis was intoxicated but does not show that Ellis was so intoxicated that he could not form the requisite mental state to commit attempted murder, as required for an intoxication defense. *See United States v. Boyles*, 57 F.3d 535, 541–42 (7th Cir. 1995). Indeed, the

9

district court reasonably concluded that, based on the record before it, there was "no credible evidence of an accidental shooting." J.A. 125. Rather, Ellis's "conduct showed an absolute disregard for human life." J.A. 125.

We decline to find that the district court erred in failing to consider Ellis's unraised voluntary intoxication defense. On plain error review, Ellis has the burden to establish that the district court erred in its application of the attempted murder cross-reference. It did not err, and this ends our analysis.

## B.  Substantial Evidence

We next address Ellis's contention that the district court's application of the attempted murder cross-reference was not supported by substantial evidence. According to Ellis, Gross's testimony did not provide sufficient support to establish an intent to kill, especially because Ellis had been intoxicated. The Government must "prove by a preponderance of the evidence that the sentencing enhancement should be applied." *United States v. Steffen*, 741 F.3d 411, 414 (4th Cir. 2013). These findings are reviewed under the clear error standard. *United States v. Garnett*, 243 F.3d 824, 828 (4th Cir. 2001). We afford great deference to the district court's credibility findings, which can "virtually never be clear error." *See United States v. Lynn*, 912 F.3d 212, 216 (4th Cir. 2019) (quoting *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012)).

While first degree murder "requires a showing of premeditation" and "malice aforethought," second degree murder requires only a showing of malice aforethought. *United States v. Williams*, 342 F.3d 350, 356 (4th Cir. 2003). The requisite showing of malice aforethought for second degree murder can be established "from the whole facts

10

and circumstances of the killing." *Id.* (citation omitted). The Government need not "show an intent to kill or injure." *Id.* "Rather, malice aforethought 'may be established by evidence of conduct which is 'reckless and wanton and a gross deviation from a reasonable standard of care, of such nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm.'" *Id.* (citation omitted). To prove attempted murder, the Government must show that the defendant both had "culpable intent to commit the crime" and "took a substantial step towards completion of the crime that strongly corroborate that intent." *United States v. Engle*, 676 F.3d 405, 420 (4th Cir. 2012).

In support of application of the attempted murder cross-reference, the Government presented evidence that Ellis specifically intended to kill Gross. Ellis testified that he shot Gross accidentally; he did not know the gun was loaded; and he was drunk. The district court was not compelled to credit this testimony, however. Rather than crediting Ellis, the district court instead credited Gross's testimony that Ellis pulled out a gun, cocked it back, pointed it at him and fired from close proximity. It is not our role to second guess the credibility determinations of the district court. The court's findings suffice to support an attempted murder cross-reference. "It is, after all, only natural to infer that when someone shoots at another person, the shooter intends to kill." *State v. Williams*, 876 S.E.2d 324, 327 (S.C. Ct. App. 2022); *see United States v. Howell*, 17 F.4th 673, 690 (6th Cir. 2021).

We have reviewed Ellis's remaining contentions that the district court's application of the attempted murder cross-reference was not based on substantial evidence and are unpersuaded. We conclude that the district court did not clearly err in finding Ellis possessed the requisite intent to kill Gross.

11

## III.  Conclusion

The district court correctly applied the attempted murder cross-reference and the district court's factual findings were supported by substantial evidence. We therefore affirm the judgment of the district court.

*AFFIRMED*