THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY ARTHUR WARNER, Defendant-Appellant.

Fourth District   No. 16831

Opinion filed July 17, 1981.

434

Geisler, Waks & Geisler, of Decatur (Asher O. Geisler and Gary F. Geisler, of counsel), for appellant.

Hugh Finson, State's Attorney, of Monticello (Diana W. Roe, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

On October 22, 1980, following a jury trial in the circuit court of Piatt County, defendant, Larry A. Warner, was convicted of two counts of unlawful restraint (Ill. Rev. Stat. 1979, ch. 38, par. 10—3) and four counts of contributing to the neglect of a child. (Ill. Rev. Stat. 1979, ch. 23, par. 2361.) He was sentenced to 2 years' probation for the offenses of unlawful restraint and 1 year probation for four counts of contributing to the neglect of a child. The sentences were to run concurrently.

On appeal, defendant contends that: (1) even if he were head of the household, he did not commit the offense of unlawful restraint merely by confining the children to their bedrooms; (2) even though he shared a house with the children and their mother, he did not become a "person having custody" of the children as defined in the statute (Ill. Rev. Stat. 1979, ch. 23, par. 2361); and (3) the convictions of contributing to the neglect of a child and the convictions of unlawful restraint arose from the same acts and are therefore merged.

At trial, the evidence was undisputed that Sonja Peyton and her four children, Jesse, Sarah, Alice and Joseph, lived with the defendant and his two children for approximately two years prior to July 1980. Peyton and defendant agreed that defendant could work and support both families, and Peyton would remain at home and take care of all six children. During the time the two families lived together, defendant did not have a steady job, collected unemployment compensation and refused to allow Peyton to work outside the home. Peyton received Illinois Public Aid and food stamps for both families.

"A person commits the offense of unlawful restraint when he knowingly without legal authority detains another." Ill. Rev. Stat. 1979, ch. 38, par. 10—3.

The evidence is undisputed that during the months of June and July 1980, Jesse was confined to his bedroom for approximately 30 days, and Sarah was confined to her bedroom for one week, as punishment for "stealing" food from the family kitchen. Jesse and Sonja testified that the defendant had imposed these restrictions, although the defendant denied that it was his idea.

The record further indicates that during the time Jesse was confined to his room, he was allowed to leave the room once a day to use the bathroom, food was brought to him, and he was not allowed to see or talk to anyone other than the defendant. In addition, the evidence showed that the windows and door in Jesse's room were closed, and the windows were covered with plastic until the last week of his confinement when a fan was placed in the room. Throughout the 30-day period, Jesse was permitted to leave his bedroom for one visit to defendant's mother's grave and "some" trips to the park or to shop. The actual number of such visits is in dispute. Jesse's testimony was unclear as to how many, if any, of the visits occurred during the restriction period. At one point, he testified he never went shopping during that time, and at another point, he testified he went shopping approximately ten times. On redirect examination, Jesse stated that some, but not all of the trips to the park and to shop were during the period of restriction.

Sonja Peyton testified that during the restriction period, Jesse appeared "peaked, white and almost comatose," and Sarah broke out in a heat rash.

Defendant cites Dr. Benjamin Spock, *Baby and Child Care* (3d ed. 1968), as authority for his first argument that he did not commit the offense of unlawful restraint by confining Jesse and Sarah to their bedrooms as a means of discipline. Dr. Spock recognized some form of confinement as an appropriate form of punishment although he neither encouraged nor condemned it.

■■ However, the standard which governs parental discipline is one of reasonableness. In *Fletcher v. People* (1869), 52 Ill. 395, where the defendant was convicted of unlawful detention, the court stated that while "the law gives parents a large discretion in the exercise of authority over their children * * * this authority must be exercised within the bounds of reason and humanity. If the parent commits wanton and needless cruelty upon his child, either by imprisonment * * * or by inhuman beating, the law will punish him." *Fletcher*, at 397.

■■ Based on the circumstances of the case, the trier of fact was required to determine whether the punishment was reasonable. The jury could

have concluded that it was not reasonable to confine a child to an unventilated bedroom during the summer for the greater part of one month, or even for the one week that Sarah was confined.

■■ The defendant also argues the children were not detained since they were allowed to leave their bedrooms to go shopping and to the cemetery. However, physical force is not necessary to accomplish the restraint as long as the individual's freedom of locomotion is impaired. (*People v. Satterthwaite* (1979), 72 Ill. App. 3d 483, 391 N.E.2d 162.) Since the children were not free to leave the custody and control of the defendant and were kept in their rooms for the vast majority of the time, the jury could reasonably have concluded beyond a reasonable doubt that the children had been detained within the meaning of the statute.

Defendant was convicted of four counts of contributing to the neglect of a child: *i.e.*, Jesse, Sarah, Alice, and Joseph. The statute defines the offense as follows:

"Any parent, legal guardian or person having the custody of a child * * * who knowingly or wilfully causes * * * such person to be or to become a dependent and neglected child as defined in [ch. 23, par. 2360.]" (Ill. Rev. Stat. 1979, ch. 23, par. 2361.)

The allegations were supported by evidence that defendant provided a home, which "by reason of [his] neglect [or] cruelty * * * [was] an unfit place" for the children. Ill. Rev. Stat. 1979, ch. 23, par. 2360.

The evidence was undisputed that the children were punished by a system referred to as "stripes." A stripe was a black and blue mark left when the child was struck with a belt. A formula was devised to determine the number of stripes each child was to receive according to a record kept of the children's offenses: *e.g.*, lying, failure to keep their rooms clean or failure to properly complete their chores. The children's mother admitted she kept the record of offenses, and the defendant admitted that he hit the children with a belt once or twice a week. Further evidence of neglect and cruelty indicated the children were not properly fed and were governed by a strict set of rules in addition to the "stripes" system.

Defendant contends he was not a parent or legal guardian of Sonja Peyton's children within the meaning of the statute. (Ill. Rev. Stat. 1979, ch. 23, par. 2361.) Defendant argues he did not become the custodian of the children simply by residing under the same roof as their mother even if he took certain disciplinary measures as alleged.

■■ The supreme court has held that to be guilty of the offense of contributing to the dependency or neglect of a child, one must be a parent of that child or stand *in loco parentis* thereto. *People v. Lee* (1914), 266 Ill. 148, 107 N.E. 112.

The case at bar is closely analogous to *People v. Parris* (1971), 130 Ill. App. 2d 933, 267 N.E.2d 39. There, the court held the husband of the child's natural mother was head of the household and stood in the position of *in loco parentis* since he performed the duties of parent to the child by rearing the child as his own.

■■ The instant case takes *Parris* one step further since defendant is not married to the children's mother. Here, as in *Parris*, the defendant and the children lived under the same roof, ate at the same table from a common source of support, and the defendant exercised the parental right of discipline over the children.

In *People ex rel. Smilga v. Hoyer* (1952), 345 Ill. App. 365, 103 N.E.2d 378, the court recognized that "the term '*in loco parentis*' * * * refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation." The jury could have concluded that the defendant assumed such obligations and should therefore be liable for the neglect of the children.

The jury was properly instructed that they must find defendant to have been *in loco parentis* in order to convict him. Their verdict of guilty indicated they so found.

■■■ Defendant's claim that the two offenses merged is based upon his contention that the unlawful restraint was part of the conduct which constituted the contributing to the neglect offense. In order for offenses to merge one must be an included offense of the other or they must be "carved" from the same act. (*People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 181, 98 S. Ct. 273.) Clearly, each offense as defined has separate elements thus preventing either offense from being an included offense of the other by definition. Neither charge indicated that one of the offenses was part of the other offense. Much of the conduct giving rise to the contributing to the neglect offense occurred at times not covered by the unlawful restraint. Accordingly, we conclude that neither offense was an included offense of the other, nor was one carved from the same act as the other. The offenses did not merge.

For the reasons stated, we affirm.

Affirmed.

WEBBER and LONDRIGAN, JJ., concur.