In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3395

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EMMANUEL L. HART,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CR 344—**James B. Zagel**, *Judge.*

ARGUED APRIL 9, 2008—DECIDED AUGUST 25, 2009

Before POSNER, RIPPLE and MANION, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Emmanuel Lewis Hart pleaded guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a). The district court sentenced him to 156 months' imprisonment and three years of supervised release under the career offender Guideline, U.S.S.G. § 4B1.1. We now vacate Mr. Hart's sentence and remand his case to the district court for resentencing in light of this opinion.

# I

# BACKGROUND

On May 13, 2006, Mr. Hart entered a Chicago bank carrying a small black bag and a robbery note. He handed a teller the note, which read: "There is a bomb in this bag give me the 100.00, 50.00, & 20.00 with no dye pack's & no cops or I'll blow this motherf[—]ker up its up to you if anybody get hurt." R.15. The teller gave Mr. Hart $2,400, and he left the bank. On his way out, he set the black bag on a table; there was no bomb in the bag. The police apprehended Mr. Hart the same day.

On November 20, 2006, Mr. Hart pleaded guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a). The presentence investigation report ("PSR") concluded that Mr. Hart was a career offender under section 4B1.2 of the United States Sentencing Guidelines. This determination was based on his two prior convictions for crimes of violence: a bank robbery conviction in 1998 and a conviction for escape in 2005. Applying the career offender Guideline, the PSR calculated Mr. Hart's advisory sentencing range at 151 to 188 months and recommended a sentence of 168 months. The PSR also opined that there was no basis for a sentence below the guidelines range.

Mr. Hart raised two objections to the PSR. He first argued that his escape conviction was not a crime of violence because it was a "walkaway" escape; that is, a non-violent departure from nonsecure custody. The Government agreed that his escape was of the walkaway variety. The parties agree that at the time of his escape

in June 2004, Mr. Hart was serving the last portion of his sentence for the 1988 bank robbery in a nonsecure half-way house run by the Salvation Army. One day, he received a two-hour pass permitting him to leave the facility to go shopping at a local grocery store. He returned late, apparently because he mistakenly believed he had a four-hour pass. The Salvation Army required residents who returned late to submit to a blood test, but rather than do so, Mr. Hart left the facility. Shortly thereafter, the police found him sleeping on a park bench and took him back into custody without incident. Based on these facts, Mr. Hart argued at his sentencing hearing in this case that the escape should not be treated as a crime of violence for sentencing purposes because it did not create a serious risk of physical injury to anyone.

Mr. Hart also submitted that a below-guidelines sentence was appropriate in his case because of his long history of mental illness. Mr. Hart is a diagnosed schizophrenic; symptoms of his illness, including delusions and auditory hallucinations, began when he was six years old and continue to this day. Over the years, Mr. Hart has been treated with various antipsychotic medications and has participated in several mental health programs. Prior to sentencing, he was examined by Dr. Bernard Rubin, a forensic psychiatrist. Dr. Rubin concluded that Mr. Hart was suffering from moderately severe schizophrenia at the time of the robbery, and that he knew his conduct was criminal, but could not control his behavior because it was driven by "psychotic and disordered thinking with a resultant lack of judg-

mental control." R.45 at 4. Mr. Hart contended at sentencing that a below-guidelines sentence was appropriate in his case because he would not receive the necessary psychiatric treatment while he was in prison.

The district court agreed with the PSR's conclusion that both Mr. Hart's bank-robbery and escape convictions were crimes of violence and that he therefore should be sentenced as a career offender under U.S.S.G. § 4B1.1. The court declined to impose a below-guidelines sentence based on Mr. Hart's mental illness. Although the district court was convinced that Mr. Hart had legitimate mental problems, it concluded that a below-guidelines sentence was not appropriate. Among other things, the court determined that, because of financial limitations, Mr. Hart would not receive adequate psychiatric treatment outside of prison and that he would continue to present "a danger to himself and a danger to others." R. 38 at 11. The court concluded that it would be best for Mr. Hart and for society if he were incarcerated for a period of time consistent with his guidelines range. The court reasoned that prison would provide Mr. Hart with much-needed structure and that he would be less of a threat to himself and others upon release because he would be older. Accordingly, the court sentenced Mr. Hart to a within-guidelines term of 156 months' imprisonment, to be followed by three years of supervised release.

Mr. Hart sought review of his sentence in this court, challenging both the district court's classification of his escape as a crime of violence and its refusal to impose a

below-guidelines sentence. At the time this appeal was briefed and argued, our precedent made it clear that escape was categorically a crime of violence.[1] On April 16, 2008, however, the Supreme Court of the United States issued its decision in *Begay v. United States*, 128 S. Ct. 1581 (2008), which cast doubt on our previous approach for evaluating whether a particular crime is a crime of violence. On April 21, the Supreme Court granted certiorari to review our decision in *United States v. Chambers*, 473 F.3d 724 (7th Cir. 2007), in which we had held that failure to report to a penal institution also constitutes a crime of violence. Then, on September 9, this court announced its decision in *United States v. Templeton*, 543 F.3d 378 (7th Cir. 2008). In *Templeton*, we reconsidered our previous holdings in light of *Begay* and concluded that, contrary to our prior holdings, "walkaway" escapes—that is, escapes from nonsecure detention facilities—are not crimes of violence for sentencing purposes.

On November 21, 2008, we issued an order deferring our decision in this case until after the Supreme Court rendered its decision in *Chambers*. We also directed the parties to file supplemental memoranda within twenty days of the Supreme Court's decision. The Supreme Court issued its decision in *Chambers v. United States*, 129 S. Ct. 687 (2009), on January 13, 2009. The Court reversed our earlier decision and held that a conviction

---

[1] *See United States v. Chambers*, 473 F.3d 724 (7th Cir. 2007); *United States v. Golden*, 466 F.3d 612, 614-15 (7th Cir. 2006); *United States v. Bryant*, 310 F.3d 550, 553-54 (7th Cir. 2002).

for failure to report under Illinois' escape statute is not a crime of violence for sentencing purposes.

The parties in this case have filed their supplemental memoranda; they agree that Mr. Hart's sentence should be vacated and his case remanded for resentencing.[2]

## II

## DISCUSSION

Mr. Hart submits that the district court erred in sentencing him as a career offender because it incorrectly treated his escape conviction as a "crime of violence" under U.S.S.G. § 4B1.2. He also contends that the district court failed to address adequately his argument that a below-guidelines sentence was appropriate in light of his mental illness.

---

[2]  In its supplemental memorandum to the court, the Government states:

> [T]he government now concedes that in light of the Supreme Court's decision in *Chambers*, walkaway escapes no longer qualify as crimes of violence under the Guidelines. The government, however, expressly preserves for future litigation the issue of whether other forms of escape should continue to be treated as crimes of violence and violent felonies, to wit, jailbreaks, unauthorized departures from secure custody or from the presence of a law enforcement officer, and other similar forms of criminal conduct that involve violations of fleeing-and-eluding statutes.

The Guidelines prescribe longer sentences for defendants whose criminal histories qualify them as "career offenders." Section 4B1.1(a) of the Guidelines defines the term "career offender" as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Section 4B1.2 defines the term "crime of violence":

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
>> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>>
>> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2. Mr. Hart does not dispute that his offense of conviction in this case, bank robbery, is a felony and a crime of violence. Nor does he dispute that his prior bank robbery was a crime of violence. He takes issue, however, with the district court's conclusion

that his escape in 2005 was a crime of violence. Escape is not one of the crimes enumerated in section 4B1.2; the question, therefore, is whether it falls within that section's "residual clause," which describes crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2.

At the time Mr. Hart was sentenced, we consistently had concluded that all escapes, even non-violent ones such as walkaways and failures to report, were crimes of violence for purposes of career-offender sentencing.[3] We reached this conclusion primarily by reasoning that all escapes, even walkaways and failures to report, create a serious potential risk of injury when the escapee is re-apprehended. We ultimately came to doubt the wisdom of this conclusion, but, by that point, we believed that stare decisis required that we follow our precedent. *See Chambers*, 473 F.3d at 726 ("We shall

---

[3] *See Chambers*, 473 F.3d 724 (holding that a walkaway escape was a violent felony under 18 U.S.C. § 924(e)); *Golden*, 466 F.3d at 614-15 (holding that a failure to report was a violent felony under 18 U.S.C. § 924(e)); *Bryant*, 310 F.3d at 553-54 (holding that a failure to report was a crime of violence under the Guidelines). Much of the case law in this area has developed in the context of determining what counts as a "violent felony" for purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). ACCA "defines 'violent felony' in the same way as § 4B1.2 defines 'crime of violence,' and we interpret § 4B1.2 in the same way as § 924(e)." *United States v. Templeton*, 543 F.3d 378, 380 (7th Cir. 2008).

adhere to the precedents for now. But it is an embarrass-ment to the law when judges base decisions of con-sequence on conjectures, in this case a conjecture as to the possible danger of physical injury posed by criminals who fail to show up to begin serving their sentences or fail to return from furloughs or to halfway houses.").

The Supreme Court's decision in *Begay v. United States*, 128 S. Ct. 1581 (2008), however, caused us to reconsider our conclusion that all escapes necessarily are crimes of violence. In *Begay*, the Supreme Court clarified that the residual clause does not cover *all* crimes that present a serious risk of injury; rather, it includes only those crimes that "are roughly similar, in kind as well as in degree of risk posed," to the enumerated examples: burglary, arson, extortion and use of explosives. *Id*. at 1585. Accordingly, the Court held that, although drunk driving does create a risk of injury to others, it is not a violent felony within the meaning of the residual clause because the crime itself involves conduct that is fundamentally different in kind from the conduct involved in crimes like burglary and arson.

In *United States v. Templeton*, 543 F.3d 378 (7th Cir. 2008), we revisited our characterization of escape as invariably a crime of violence. The defendant in *Templeton* had been sentenced as a career offender based in part on a prior conviction for escape in Wisconsin. The defendant urged us to reconsider our precedent in light of *Begay*. He also presented statistical data indicating that 11% to 15% of escapes involved physical resistance to recapture by the escapee. *Templeton*, 543 F.3d at 381. Although we

rejected the defendant's contention that those data illustrated a low risk of injury to others, we noted that the data reflected all escapes, not just walkaways. We then focused on other data indicating that, although escapes from secure custody produced a significant risk of injury to guards and civilians, walkaways produced almost none. *Templeton*, 543 F.3d at 382. We noted that escapes from secure custody present a serious risk of physical confrontation with guards or police, a risk that is very similar to that presented when someone breaks into a building to commit burglary. Walkaways from nonsecure custody and failures to report, on the other hand, present little or no such risk. Accordingly, we concluded that walkaway escape should be treated as a distinct category of crime and should not be considered a crime of violence for the purposes of section 4B1.2.

Turning to the Wisconsin statute that the defendant had been convicted of violating, Wis. Stat. § 946.42, we concluded that it criminalized both categories of escape.[4] Because the record did not include the charging documents for the defendant's state-law conviction, we remanded the case to allow the district court to determine whether the defendant had been charged and con-

---

[4] Section 946.42 of the Wisconsin Statutes criminalizes escape from custody. It defines "custody" to include both "actual custody" by the police or correctional personnel and "the constructive custody of persons placed on supervised release . . . [or] temporarily outside the institution whether for the purpose of work, school, medical care, a leave granted under s. 303.068, a temporary leave or furlough granted to a juvenile, or otherwise." Wis. Stat. 946.42.

victed of a walkaway escape or an escape from secure custody. If it was a walkaway escape, or if the answer was not apparent from the charging papers, we directed the district court not to classify the defendant's escape as a crime of violence.

A few months after our decision in *Templeton*, the Supreme Court announced its decision in *Chambers v. United States*, 129 S. Ct. 687 (2009). In *Chambers*, the Court held that failure to report to a penal institution was not a violent crime for sentencing purposes. In doing so, the Court applied an approach that was similar to our approach in *Templeton*.

The defendant in *Chambers* had been sentenced as a career offender based on a conviction for failing to report to a penal institution in violation of Illinois law.[5] The defendant argued that this conviction should not be

---

[5] The statute at issue in *Chambers* reads as follows:

§ 31-6. Escape; failure to report to a penal institution or to report for periodic imprisonment.

(a) A person convicted of a felony . . . or charged with the conviction of a felony who intentionally escapes from any penal institution or from the custody of an employee of that institution commits a Class 2 felony; however, a person convicted of a felony . . . who knowingly fails to report to a penal institution or to report for periodic imprisonment at any time or knowingly fails to return from furlough or from work and day release or who knowingly fails to abide by the terms of home confinement is guilty of a Class 3 felony.

720 ILCS 5/31-6.

considered a violent felony for sentencing purposes.
The district court concluded that it was a violent felony
and we affirmed on appeal. The Supreme Court granted
certiorari and reversed. In its decision, the Court began
its review of the case with the Illinois statute, which it
interpreted as actually describing more than one
distinct crime:

> The Illinois statute now before us . . . places together
> in a single numbered statutory section several dif-
> ferent kinds of behavior. It separately describes those
> behaviors as (1) escape from a penal institution,
> (2) escape from the custody of an employee of a penal
> institution, (3) failing to report to a penal institution,
> (4) failing to report for periodic imprisonment,
> (5) failing to return from furlough, (6) failing to
> return from work and day release, and (7) failing to
> abide by the terms of home confinement.
>
> . . .
>
> Unlike the lower courts, we believe that a failure to
> report (as described in the statutory provision's third,
> fourth, fifth, and sixth phrases) is a separate crime,
> different from escape (the subject matter of the stat-
> ute's first and second phrases), and from the poten-
> tially less serious failure to abide by the terms of home
> confinement (the subject of the final phrase). The
> behavior that likely underlies a failure to report
> would seem less likely to involve a risk of physical
> harm than the less passive, more aggressive behavior
> underlying an escape from custody. Moreover, the
> statute itself not only lists escape and failure to

report separately (in its title and its body) but also places the behaviors in two different felony classes (Class Two and Class Three) of different degrees of seriousness.

At the same time, we believe the statutory phrases setting forth various kinds of failure to report (or to return) describe roughly similar forms of behavior. Each is characterized by a failure to present oneself for detention on a specified occasion. All amount to variations on a single theme. We consequently treat the statute for ACCA purposes as containing at least two separate crimes, namely escape from custody on the one hand, and a failure to report on the other. Failure to abide by home confinement terms—potentially the least serious of the offenses—is not at issue here.

*Chambers*, 129 S. Ct. at 691 (citations omitted). Having decided that failure to report constitutes a distinct class of crime under Illinois law, the Court then asked whether it presented a sufficiently serious risk, and was similar enough to the enumerated offenses, to qualify as a violent felony under the residual clause. In making this determination, the Court was heavily influenced by a report, published by the United States Sentencing Commission in November 2008, that compiled data on federal escape offenses for the previous two years. The Commission's data revealed that failures to report almost never result in a risk of injury to anyone. Out of 160 cases in which a federal prisoner either failed to report to prison or failed to return from temporary

release, not a single case resulted in injury or the use of force, and only five cases, or 3.1 percent, involved possession of a dangerous weapon. *Id.* at 693 App. B. In the Court's view, this data "strongly support[ed] the intuitive belief that failure to report does not involve a serious potential risk of injury." *Id.* at 692. The Court also distinguished the crime of failure to report from the types of crime specified in the residual clause, noting that "[c]onceptually speaking, the crime amounts to a form of inaction, a far cry from the 'purposeful, violent, and aggressive conduct' potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion." *Id.* at 692 (quoting *Begay*, 128 S. Ct. at 1586). Accordingly, the Court reversed our decision and held that failure to report is not a violent felony for sentencing purposes.

After the *Chambers* decision, it appeared that a three-step inquiry was indicated for determining whether a conviction under a broadly-worded escape statute was a crime of violence. First, we would look to the language of the statute to determine whether the statute was divisible—that is, whether it punished more than one category of crime. If it did, then we would determine whether any of the crimes within the scope of the statute was *not* a crime of violence as defined in the residual clause. If we determined that the statute punished one or more non-violent crimes, we then would determine whether the crime of which the defendant was convicted fell into one of the non-violent categories.

This approach is now foreclosed to us, however. In *United States v. Woods,* No. 07-3851, 2009 WL 2382700 (7th Cir. 2009), we revisited our approach to determining whether a statute is divisible for career-offender-sentencing purposes. In *Templeton*, we had asked whether the same statute punished two or more distinct types of conduct. In *Woods*, however, we repudiated that approach in favor of a strictly formal approach. Now, a statute is divisible only if it "*expressly* identifies several ways in which a violation may occur." *Woods*, slip op. at 14 (emphasis added). Thus, a statute that said "anyone who escapes from custody, whether by jailbreak, walk-away, or failure to report, has committed a felony," would be treated by this court as divisible,[6] while a statute that simply said "anyone who escapes from custody has committed a felony" would be treated as indivisible,[7] even if the two statutes covered exactly the same range of conduct.

---

[6] *See United States v. Woods*, No. 07-3851, 2009 WL 2382700 (7th Cir. 2009), slip op. at 13 (quoting *Nijhawan v. Holder*, 129 S. Ct. 2294, 2299 (2009), in which the Supreme Court noted that a statute that criminalized breaking into a "building, ship, vessel or vehicle" was divisible for purposes of determining whether the defendant was convicted of breaking into a building—a categorically violent crime—or into a vessel—a categorically non-violent crime).

[7] See *id*. at 11-14 (rejecting *Templeton*'s holding that the Wisconsin escape statute, which defined escape as "leav[ing] custody in any manner without lawful permission or authority," was divisible for career-offender-sentencing purposes).

With these considerations in mind, we turn to the federal escape statute under which Mr. Hart was convicted, 18 U.S.C. § 751(a). It reads, in relevant part, as follows:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both . . . .

18 U.S.C. § 751(a). The statute does not define the term "escape," but "courts and commentators are in general agreement that it means absenting oneself from custody without permission." *United States v. Bailey*, 444 U.S. 394, 407 (1980) (collecting sources). It is clear from our cases that the statute prohibits not only escapes from secure custody, but also walkaways from nonsecure custody and failures to report at the end of an authorized period of freedom. *See, e.g., United States v. Rivera*, 463 F.3d 598, 600 (7th Cir. 2006) (walkaway); *United States v. Bryant*, 310 F.3d 550, 552 (7th Cir. 2002) (failure to report).

Thus, the federal escape statute covers a wide range of conduct, from violent jailbreaks to quiet walkaways to

passive failures to report. It does not, however, enumerate explicitly the different ways in which the statute can be violated. Under *Woods*, therefore, it is an indivisible statute. Accordingly, the categorical approach requires us to determine whether escape under the federal statute, as a general matter, is "roughly similar, in kind as well as in degree of risk posed," to the crimes of burglary, arson, extortion and use of explosives. *Begay*, 128 S. Ct. at 1585. Put another way, we must ask whether federal escape is an offense "of a type that, by its nature, presents a serious potential risk of injury to another." *James v. United States*, 550 U.S. 192, 209 (2007).

But what is the "nature" of a crime that can be committed in so many different ways? In *Chambers*, the Supreme Court took notice of statistics compiled by the United States Sentencing Commission detailing the incidence of violence during escapes from federal custody. Those statistics revealed that prisoners who escaped from secure custody—what might be called a "jailbreak"—possessed dangerous weapons 31.3% of the time. *Chambers*, 129 S. Ct. at 693 App. B. This unquestionably created a significant risk of injury to others. Prisoners who walked away from nonsecure custody, however, or failed to report, had weapons only rarely: a mere 2.7% of the time. *Id.* Adding all of the escape offenses together reveals that dangerous weapons were present in about 7% of all escapes. *Id.* This is, perhaps, not a shockingly high figure, but neither is it an insignificant one.

We mention these figures not because there is some statistical cutoff separating violent from non-violent

crimes—we do not read *Chambers* to suggest any such thing—but simply to elucidate the difficulties inherent in attempting to ascribe a single violent or non-violent "nature" to crimes committed under such a broadly applicable statute. In this case, however, it is enough to note that, unlike the offenses enumerated in section 4B1.2 of the Guidelines, one can commit escape under the federal statute without putting oneself, or anyone else, in harm's way. Burglary of a dwelling requires the perpetrator to enter the home of another person; if that person happens to be home, or to come home, a confrontation is likely. Arson requires the perpetrator to set fire to a building, creating a grave risk to anyone who might be in, or near, the building. By contrast, one can commit "escape" under the federal statute simply by staying home on the day one is supposed to surrender. Accordingly, we hold that a violation of 18 U.S.C. § 751(a), as a categorical matter, is not a crime of violence under the Sentencing Guidelines. Mr. Hart's sentence therefore must be vacated and his case remanded for resentencing by the district court.[8]

---

[8] Because we are remanding Mr. Hart's case for resentencing, we need not address his argument that his original sentence was unreasonable.

## Conclusion

Accordingly, we vacate Mr. Hart's sentence and remand his case to the district court for proceedings consistent with this opinion.

VACATED AND REMANDED